## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ANGELA J. MARTEL, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | 3:06-cv-1145 (WWE) |
| | : | |
| TOWN OF SOUTH WINDSOR, RICHARD | : | |
| WATROUS, MARY SETSKY, | : | |
| Defendants. | : | |

## **MEMORANDUM OF DECISION ON VARIOUS MOTIONS**

This action arises from plaintiff Angela Martel's claims that defendants Town of South Windsor and Richard Watrous[1] violated her rights under the Fourth Amendment to the United States Constitution and Article One, Sections 7 and 9 of the Connecticut Constitution. Martel also asserts common law claims of intentional infliction of emotional distress and malicious prosecution. Now pending before the Court are defendants' Motion for Summary Judgment (Doc. #23) and plaintiff's Motion to Strike (Doc. #28). For the following reasons, the motions will both be granted.

The Court has jurisdiction over plaintiff's claims pursuant to 28 U.S.C. § 1331 as to plaintiff's federal law claims and pursuant to 28 U.S.C. § 1367 as to plaintiff's state law claims.

## **BACKGROUND**

The parties have submitted briefs, a stipulation of facts and supporting exhibits. This evidence reflects the following factual background.

On October 11, 2001, Mary Setsky, the sister of plaintiff's father, reported to the

---

[1] The claims against Mary Setsky have been dismissed from this case and are not at issue in this decision.

1

South Windsor Police Department that her home had been burglarized. She reported that money and jewelry were taken from two locations within her home. During the burglary, her home was not ransacked.

In March 2004, Richard Watrous, a South Windsor Police Detective, was assigned to follow up on the investigation of the burglary. Subsequently, a latent finger print taken from the crime scene was matched to Curtis L. Grant who, at the time, was imprisoned at the Willard Correctional Institution for an unrelated crime.

On December 21, 2004, Watrous interviewed Grant regarding the Setsky burglary. During this interview, according to plaintiff, Watrous showed Grant a photograph of plaintiff and told Grant that she was a suspect. Watrous denies informing Grant of this. Grant identified the woman in the photograph as "Ann," told Watrous that he and "Ann" hung out and did drugs together and that "Ann" was involved in the burglary. Grant signed a statement to that effect following the meeting. Watrous believed that Grant was telling the truth regarding these events because Grant's statements were against his penal interests.

Following the meeting, on December 22, 2004, Watrous met with Setsky. Watrous told Setsky that Grant had identified the woman in the photograph as "Ann" and said that she was involved in the burglary. Plaintiff claims that Setsky told Watrous, at some point in late 2004, that plaintiff's nickname was "Ang," not "Ann." Watrous proceeded to conduct an Accurint System Check search which revealed that Grant formerly lived at 130 Nutmeg Lane in East Hartford, Connecticut. A search for "Angela Martell" revealed that she had previously lived at 115 Nutmeg Lane. Watrous

2

claims that he believed that plaintiff would be known either as "Ann" or "Ang."[2] During the course of Watrous's investigation, Setsky provided information that led Watrous to believe that plaintiff was Grant's co-conspirator. Specifically, Setsky believed that plaintiff was the burglar because (1) the house was not ransacked and plaintiff knew the layout of her aunt's house; (2) plaintiff had had a drug abuse problem and had borrowed money from family members; (3) plaintiff had begun acting differently and had become more affectionate toward Setsky; (4) plaintiff had started calling Setsky during the day to find out where she was; (5) several days before the burglary, plaintiff had showed up at Setsksy's house unexpectedly with another person; (6) plaintiff had made comments to Setsky leading her to believe that plaintiff had committed the burglary; and (7) plaintiff had the knowledge and opportunity to know where Setsky kept the stolen items.

On December 30, 2004, Watrous signed an affidavit and application for an arrest warrant, which was approved by the State's Attorney's Office on January 12, 2005 and by a judge of the Superior Court on January 17, 2005. Although his search in the Accurint system had been for an "Angela Martell," in his application for the warrant, Watrous stated that he had conducted a search for "Angela Martel."

Plaintiff argues that the following facts should have been included in the arrest warrant as exculpatory evidence that would tend to undermine a determination of probable cause: (1) Setsky told Watrous that plaintiff was not known as "Ann" but as "Ang;" (2) Setsky informed Watrous that neither plaintiff nor her father, Setsky's brother,

---

[2] In his deposition, Watrous admitted that he may have misunderstood "Ann" as "Ang" or vice versa.

had ever lived on Nutmeg Lane in East Hartford; (3) an accurate Accurint report of plaintiff, including a correct birth date and social security number, shows that she never lived on Nutmeg Lane in East Hartford; (4) Grant initially told Watrous that he knew nothing about a burglary in South Windsor; (5) Grant initially told Watrous that he "don't know no Angela Martel;" (6) Watrous told Grant at their initial interview on December 21, 2004 that Watrous knew that Grant and plaintiff both lived on Nutmeg Lane; and (7) Watrous informed Grant of his theory of the case, including plaintiff's involvement, at that initial meeting.

Plaintiff was subsequently found not guilty of burglary after a jury trial.

## DISCUSSION

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Bryant v. Maffucci, 923 F. 2d 979, 982 (2d Cir. 1991).

The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. Am. Int'l Group, Inc. v. London Am. Int'l Corp., 664 F. 2d 348, 351 (2d Cir. 1981). In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

If a nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof, then summary judgment is appropriate. Celotex Corp., 477 U.S. at 323. If the nonmoving party

4

submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met. Liberty Lobby, 477 U.S. at 24.

## I. Plaintiff's Motion to Strike

Plaintiff moves to strike from defendants' memorandum of law in support of the motion for summary judgment the statement that Watrous had seen a database entry that "Angela Martel" had lived on Nutmeg Lane in East Hartford. The Court will grant this motion and read that sentence as saying that "Officer Watrous checked a database that showed Grant and an 'Angela Martell' once resided at different addresses on Nutmeg Lane in East Hartford."

## II. Claims of Fourth Amendment Seizure

### A. Probable Cause Determination

Defendants first move for summary judgment on plaintiff's claims that she was arrested illegally on the grounds that plaintiff cannot establish that the criminal proceeding terminated in her favor, that probable cause existed to arrest plaintiff and, even if there was not, that Watrous is protected by the doctrine of qualified immunity.

Plaintiff claims that she was arrested without probable cause insofar as Watrous committed intentional or reckless misconduct in the pursuit of an arrest warrant. Specifically, plaintiff alleges that Watrous disregarded relevant exculpatory evidence and that his mistake in confusing "Angela Martell" and "Angela Martel" evidences reckless misconduct.

The Fourth Amendment to the United States Constitution as well as Sections 7 and 9 of Article One of the Connecticut Constitution guarantee that an individual shall

not be arrested without probable cause.  Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996); see also Saliby v. Kendzierski, 407 F. Supp. 2d 393, 398 n.2 (D. Conn. 2006) (noting that claims made under the Fourth Amendment and Article One are subject to the same analysis).  This right is violated when an "officer submitting the probable cause affidavit knowingly and intentionally, or with reckless disregard for the truth, made a false statement in his affidavit or omitted material information, and that such false or omitted information was necessary to the finding of probable cause."  Soares v. Connecticut, 8 F.3d 917, 920 (2d Cir. 1993).  The existence of probable cause to arrest constitutes justification and "is a complete defense to an action for false arrest." Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994).

Probable cause "to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime."  Weyant, 101 F.3d at 852.  A reviewing court must examine "those facts available to the officer at the time of the arrest and immediately before it." Lowth v. Town of Cheektowaga, 82 F.3d 563, 569 (2d Cir. 1996).

"[T]he issuance of a warrant by a neutral magistrate, which depends on a finding of probable cause, creates a presumption that it was objectively reasonable for the officers to believe that there was probable cause ... and a plaintiff who argues that a warrant was issued on less than probable cause faces a heavy burden."  Golino v. New Haven, 950 F.2d 864, 870-71 (2d Cir. 1991).  Further, a reviewing court should pay great deference to the determination of a neutral magistrate that probable cause existed to issue a warrant.  United States v. Smith, 9 F.3d 1007, 1012 (2d Cir. 1993).

"[R]ecklessness may be inferred where the omitted information was critical to the probable cause determination." Golino, 950 F.2d at 871. In seeking an arrest warrant, a "[p]olice officer[ ] may not purposely withhold or ignore exculpatory evidence that, if taken into account, would void probable cause.... A failure to make further inquiry when a reasonable person would have done so may evidence a lack of probable cause." Korthas v. City of Auburn, 2006 U.S. Dist. LEXIS 38745, *15 (N.D.N.Y June 9, 2006)

The question before the Court, therefore, is whether, if all the misrepresentations are corrected and the exculpatory evidence is included, there was probable cause to arrest plaintiff.

A review of the facts, resolving all ambiguities and drawing all inferences in favor of plaintiff, leads to the conclusion that a reasonable jury could conclude that there was not probable cause to arrest plaintiff if any evidence or conclusions that may have been the result of intentional or reckless misconduct is omitted. Therefore, the Court must examine whether Watrous is entitled to qualified immunity for his actions.

### B. Qualified Immunity Determination

Qualified immunity shields government officials whose conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The scope of qualified immunity is broad, and it protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).

The test for qualified immunity is twofold and must be considered in sequence. The threshold question is whether, taken in the light most favorable to the plaintiff, the

7

facts demonstrate the police officer's violation of one of the plaintiff's constitutional rights. The next question is whether that constitutional right was clearly established within the specific context of the case. In other words, the court must consider whether the constitutional right was clear enough so that a reasonable officer would understand that his actions would violate that right. Saucier v. Katz, 533 U.S. 194, 201 (2001).

Thus, a qualified immunity defense is established where "(a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." Tierney v. Davidson, 133 F.3d 189, 196 (2d Cir. 1998).

The doctrine of qualified immunity recognizes that "reasonable mistakes can be made as to the legal constraints on particular police conduct." Saucier, 533 U.S. at 205. Qualified immunity applies if the officer's mistake as to what the law requires is reasonable. Id. It does not apply if, on an objective basis, it is obvious that no reasonably competent officer would have taken the actions of the alleged violation. Malley, 475 U.S. at 341. Summary judgment is appropriate when a trier of fact would find that reasonable officers could disagree. Lennon v. Miller, 66 F.3d 416, 421 (2d Cir. 1995).

If the Court assumes, arguendo, that plaintiff's rights were violated, it becomes necessary to determine whether a clearly established right was violated by Watrous's conduct. See Saucier, 533 U.S. at 207-08 ("[W]e will assume a constitutional violation could have occurred under the facts alleged..., then proceed to the question whether this general prohibition against excessive force was the source for clearly established law that was contravened in the circumstances this officer faced."). While plaintiff

points to no law or cases to demonstrate that a clearly establish right was violated, the law recognizes that reasonable mistakes are covered within the qualified immunity shield.  See Malley, 475 U.S. at 343 (recognizing that qualified immunity "gives ample room for mistaken judgments"); see also County of Sacramento v. Lewis, 523 U.S. 833, 849 (1998) ("[L]iability for negligently inflicted harm is categorically beneath the threshold of constitutional due process.").

On the evidence offered by the parties, Watrous is entitled to qualified immunity in that he reasonably and objectively believed that probable cause did exist and that his arrest of plaintiff was lawful and constitutionally sound.  Watrous's mistakes in mishearing whether Grant referred to "Ann" or "Ang" and in doing a search for "Angela Martell" were reasonable and did not rise to the level of plain incompetence.

Because Watrous is entitled to qualified immunity, defendants' motion will be granted.

## III. State Law Claims

Plaintiff's only remaining claims arise under state law. Accordingly, under 28 U.S.C. § 1367(c)(3), the Court will decline to exercise supplemental jurisdiction over these claims. See Valencia ex rel. Franco v. Lee, 316 F.3d 299, 305 (2d Cir. 2003).

**CONCLUSION**

For the foregoing reasons, the Court GRANTS defendants' motion for summary judgment (Doc. #23). Further, the Court GRANTS plaintiff's motion to strike (Doc. #28). The Clerk is instructed to close this case.

Dated at Bridgeport, Connecticut, this 12th day of June, 2008.

                                            /s/
                                   Warren W. Eginton
                                   Senior United States District Judge